Eugene M. Pak (Bar No. 168699)
epak@wendel.com
Miguel Saldaña (Bar No. 299960)
msaldana@wendel.com
**WENDEL ROSEN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Tel:   (510) 834-6600
Fax:   (510) 834-1928

Attorneys for Paul C. Clark (Specially Appearing)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOCUSIGN, INC., | Case No. 3:21-cv-04785-WHO |
| Plaintiff, | **DEFENDANT PAUL C. CLARK'S NOTICE OF MOTION AND MOTION TO:** |
| vs. | **(1)  DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION;** |
| PAUL C. CLARK, | **(2)  DISMISS COUNTS I, II, AND III;** |
| Defendant. | **(3)  DISMISS THE FIRST AMENDED COMPLAINT UNDER THE FIRST-TO-FILE RULE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Date:     January 5, 2022 |
| | Time:     2:00 p.m. |
| | Ctrm.:    2, 17th Floor |
| | Judge:    Hon. William H. Orrick |
| | Complaint Filed:    June 22, 2021 |
| | FAC Filed:    November 10, 2021 |

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 5, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick in Courtroom 2, located on the 17th Floor of the United States District Court for the Northern District of California (San Francisco Division), located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Paul Clark will and hereby does move this Court for an order as follows:

(1)     dismissing Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2) for lack of personal jurisdiction over Defendant;

(2)     dismissing Plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, and concealment as(b)(6) for failure to state a claim for relief as these tort claims are barred by the economic loss rule;

(3)     dismissing Plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, and concealment, pursuant to FRCP 8(a), 9(b), and 12(b)(6) for failure to state a claim for relief including a claim that is plausible, and for failure to plead fraud with particularity;

(4)     dismissing Plaintiff's First Amended Complaint pursuant to the "First-To-File" Rule in light of the pending lawsuit filed by Defendant in the United States District Court for the District of Columbia in the matter captioned *Paul C. Clark v. DocuSign, Inc.*, Case No. 21-cv-01007-DLF.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and Declaration of Paul C. Clark, the First Amended Complaint and its exhibits, any Reply memorandum, the pleading and files in this action, and such other matters as may be presented at or before the hearing.

DATED:  November 24, 2021            WENDEL ROSEN LLP

By:      */s/ Eugene M. Pak*
Eugene M. Pak
Attorneys for Paul C. Clark (Specially Appearing)

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION.................................................................................................1

II.     FACTUAL BACKGROUND AND RELEVANT ALLEGATIONS...................................1

III.    LEGAL ARGUMENT ...........................................................................................3

     A.      DR. CLARK IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA..................................................................................................3

         1.      Legal Standard.................................................................................3

         2.      DocuSign Has Not Alleged Sufficient Facts to Establish General Jurisdiction ....................................................................................5

     B.      THIS COURT DOES NOT HAVE SPECIFIC JURISDICTION OVER DR. CLARK BECAUSE DOCUSIGN'S ALLEGATIONS OF DR. CLARK'S ACTIVITIES DO NOT SATISFY THE MINIMUM CONTACTS REQUIREMENTS ..............................................................................................6

         1.      No Specific Jurisdiction Over The Declaratory Judgment Of Non-Infringement ....................................................................................6

         2.      No Specific Jurisdiction Over DocuSign's Fraud-Based Counts..................7

     C.      THE FRAUD-BASED CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ..................................................................................................8

         1.      Legal Standard.................................................................................8

         2.      DocuSign's Fraud-Based Claims Must Be Dismissed Under the "Economic Loss Rule."....................................................................9

         3.      The Fraud-Based Claims Must Be Dismissed Because DocuSign Fails To Adequately Allege Why Dr. Clark's Statement Or Omission Was False Or Misleading...........................................................11

         4.      The Fraud-Based Claims Must Be Dismissed Because DocuSign Fails to Allege "Resulting Damages" With Particularity, or Proximate Causation. ...................................................................15

         5.      The Concealment Claim Must Be Dismissed Because Dr. Clark Was Under No Duty To Disclose His Patents.........................................18

     D.      THE ACTION SHOULD BE DISMISSED UNDER THE FIRST-TO-FILE RULE .................................................................................................20

         1.      Legal Standard.................................................................................20

         2.      All of the First-To-File Factors Favor Dismissing This Action..................20

IV.     CONCLUSION .................................................................................................21

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

# TABLE OF AUTHORITIES

Page

## CASES

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*
  158 Cal. App. 4th 226 (Cal. App. 2d Dist. 2007).................... 11

*Arazie v. Mullane*
  2 F.3d 1456 (7th Cir. 1993).................... 13

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .................... 8, 14

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*
  223 F.3d 1082 (9th Cir. 2000) .................... 6

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .................... 8

*Boschetto v. Hansing*
  539 F.3d 1011 (9th Cir. 2008) .................... 4

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*
  444 F.3d 1356 (Fed. Cir. 2006) .................... 4

*Burger King Corp. v. Rudzewicz*
  471 U.S. 462 (1985) .................... 4

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*
  637 F.3d 1047 (9th Cir. 2011).................... 9, 13, 14

*Daimler AG v. Bauman*
  571 U.S. 117 n.11 (2014) .................... 5

*Das v. WMC Mortg. Corp.*
  831 F.Supp.2d 1147 (N.D. Cal. 2011) .................... 9

*Davis v. Chase Bank U.S.A., NA.*
  |650 F. Supp. 2d 1073 (C.D. Cal. 2009) .................... 9

*Desaigoudar v. Meyercord*
  223 F.3d 1020 (9th Cir. 2000) .................... 8

*Erlich v. Menezes*
  21 Cal. 4th 543 (1999).................... 10

*Fladeboe v. American Isuzu Motors*
  150 C.A.4th 42, 58 C.R.3d 225 (2007) .................... 15, 16

*GemCap Lending I, LLC v. Pertl*
  2019 U.S. Dist. LEXIS 210246 (C.D. Cal. Aug. 9, 2019) .................... 8

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
   564 U.S. 915 (2011) .......................................................................................... 4, 5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
   466 U.S. 408 (1984) .............................................................................................. 6

*Heliotis v. Schuman*
   181 Cal.App.3d 646 (1986) ................................................................................. 19

*JMP Securities LLP v. Altair Nanotechnologies Inc.*
   880 F.Supp.2d 1029 (N.D. Cal. 2012) .................................................................. 9

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) .............................................................................. 9

*Marketing West, Inc. v. Sanyo Fisher* (USA) Corp.
   6 Cal.App.4th 603 (1992) .............................................................................. 12, 19

*Marvell Semiconductor Inc. v. Monterey Rsch., LLC*
   No. 20-CV-03296-VC, 2020 WL 6591197 (N.D. Cal. Nov. 11, 2020) ............................ 21

*Merial Ltd. v. Cipla Ltd.*
   681 F.3d 1283 (Fed.Cir.2012) ............................................................................. 20

*Microchip Tech., Inc. v. United Module Corp.*
   No. CV-10-04241-LHK, 2011 WL 2669627 (N.D. Cal. July 7, 2011) ............................ 21

*Moore v. Kayport Package Express, Inc.*
   885 F.2d 531 (9th Cir. 1989) .............................................................................. 15

*Morrill v. Scott Fin. Corp.*
   873 F.3d 1136 (9th Cir. 2017) .............................................................................. 5

*Naghavi v. Belter Health Measurement & Analysis Tech. Co.*
   No. 20-CV-01723-H-KSC, 2021 WL 461725 (S.D. Cal. Feb. 9, 2021) ...................... 7, 8

*National Council of La Raza v. Cegavske*
   800 F.3d 1032 (9th Cir. 2015) ............................................................................ 15

*Nuance Commc'ns, Inc. v. Abbyy Software House*
   626 F.3d 1222 (Fed. Cir. 2010) ............................................................................ 4

*NuCal Foods, Inc. v. Quality Egg LLC*
   918 F.Supp.2d 1023 (E.D. Cal. 2013) ................................................................. 10

*Odom v. Microsoft, Corp.*
   486 F.3d 541 (9th Cir. 2007) .......................................................................... 9, 13

*Oracle USA, Inc. v. XL Global Services, Inc.*
   2009 WL 2084154, at *4 (N.D. Cal., July 13, 2009, No. C 09-00537 MHP) .................. 10

*Picot v. Weston*
   780 F.3d 1206 (9th Cir. 2015) .............................................................................. 7

*Picturewall Co. v. Rice*
   No. C 09-5442 PJH, 2010 WL 1753209 (N.D. Cal. Apr. 29, 2010) ................................... 6

*Prevail Legal, Inc., v. Gordon*
   No. 20-CV-07173-BLF, 2021 WL 1947578, at *6 (N.D. Cal. May 14, 2021).................... 8

*Radio Sys. Corp. v. Accession Inc.*
   638 F. 3d 785 (Fed. Cir. 2011)..................................................................................... 4

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*
   148 F.3d 1355 (Fed. Cir. 1998)................................................................................... 6

*Richelle L. v. Roman Catholic Archbishop*
   106 Cal.App.4th 257 (2003).................................................................................... 19

*Schwarzenegger v. Fred Martin Motor Co.*
   374 F.3d 797 (9th Cir. 2004).................................................................................... 5

*Service By Medallion, Inc. v. Clorox Company ("Medallion")*
   44 Cal.App.4th 1807 (1996).............................................................................. 16, 17

*SMIC Americas et al. v. Innovative Foundry Technologies, LLC*
   No. 20-cv-02256-JSW, 2020 WL 5824046 (N.D. Cal. July 21, 2020)......................... 20

*Soil Retention Products, Inc. v. Brentwood Industries, Inc.*
   521 F.Supp.3d 929 (S.D. Cal. 2021) ....................................................................... 10

*Swanson v. Citibank, N.A.*
   614 F.3d 400 (7th Cir. 2010) ................................................................................. 15

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*
   117 F.Supp.3d 1092 (C.D. Cal. 2015)................................................................. 9, 10

*Vess v. Ciba-Geigy Corp. USA*
   317 F.3d 1097 (9th Cir. 2003) ................................................................................. 9

*Wagh v. Metris Direct, Inc.*
   363 F.3d 821 (9th Cir. 2003) ................................................................................... 9

*Walden v. Fiore*
   571 U.S. 277 (2014) ............................................................................................ 5, 7

*Yamauchi v. Cotterman*
   84 F.Supp.3d 993 (N.D. Cal. 2015) ....................................................................... 11

*Yourish v. Cal Amplifier*
   191 F.3d 983 (9th Cir. 1999)................................................................................. 12

**STATUTES**

California Civil Code § 1572 ............................................................................................ 3

California Civil Code § 1572(1)....................................................................................... 11

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

025081.0001\6482354.1

NOTICE OF MOTION AND MOTION TO
DISMISS; MPA
    iv
    Case No. 3:21-cv-04785-WHO

California Civil Code § 1572(2) .................................................................................... 11

California Civil Code § 1572(3) .................................................................................... 12

California Civil Code § 3333 ........................................................................................ 16

**RULES**

Federal Rule of Civil Procedure 12(b)(2) ...................................................................... 3

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 8

Federal Rule of Civil Procedure 8(a) ........................................................... 9, 12, 13, 14

Federal Rule of Civil Procedure 9(b) ............................................................. 8, 9, 12, 15

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

NOTICE OF MOTION AND MOTION TO
DISMISS; MPA                              v                    Case No. 3:21-cv-04785-WHO

1

# MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3       Plaintiff DocuSign, Inc.'s ("DocuSign") First Amended Complaint ("FAC") should be

4   dismissed in its entirety.  As a preliminary matter, the FAC fails to allege sufficient facts to

5   establish personal jurisdiction over the defendant Dr. Paul C. Clark ("Dr. Clark"), an individual

6   who resides in Maryland.  Moreover, the FAC is nothing more than a disingenuous and wasteful

7   attempt by DocuSign to increase Dr. Clark's litigation expenses and to try to support DocuSign's

8   motion to dismiss (for improper venue) a pending action that Dr. Clark had first filed against

9   DocuSign in the District Court for the District of Columbia alleging infringement of Dr. Clark's

10  patents.  DocuSign's FAC here, dominated by declaratory relief claims for non-infringement as to

11  the exact same patents, is duplicative and superfluous.  And DocuSign's make-weight claims

12  sounding in fraud are defective as a matter of law under the "economic loss rule," are not plead

13  with particularity, and are not plausible on their face.  The entire FAC should be dismissed with

14  prejudice.

15

## II.   FACTUAL BACKGROUND AND RELEVANT ALLEGATIONS

16      Dr. Clark is an individual domiciled in the state of Maryland.  Dr. Clark is the sole named

17  inventor on the United States Patent Nos. U.S. Patent Nos. 8,695,066 (the "066 patent");

18  9,391,957 (the "957 patent"); and 10,129,214 (the "214 patent") (collectively the "patents-in-

19  suit").  ECF Nos. 21-3, 21-4 and 21-5.  Dr. Clark does not have any phone numbers, fax numbers,

20  storage or warehouse spaces, does not pay any utilities, or have any address of any kind in

21  California.  Declaration of Dr. Paul C. Clark In Support of Motion to Dismiss ("Clark Decl.") ¶ 3.

22  Dr. Clark does not own property or pay taxes in California.  *Id*. at ¶¶ 5-6.  Dr. Clark does not have

23  bank accounts in California. *Id.* at ¶ 7.  Dr. Clark has never owned or operated a business licensed,

24  located, or organized in the State of California. *Id.* at ¶ 4.  Dr. Clark is not an officer, director,

25  manager or partner of any California entity.  *Id*.  Earlier this year, Dr. Clark did travel to California

26  on business unrelated to this Action to testify in this Court as a technical expert in *ProofPoint v.*

27  *Vade* (3:19-cv-4238-WHA) (N.D. Cal.).  *Id.* at ¶ 10.

28      In late 2012 early 2013, Dr. Clark was hired by the law firm of DLA Piper ("DLA") to

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

serve as a technical expert to assist DLA in defense of patent infringement allegations against

Adobe Systems, Inc. in *Rpost Holdings, Inc. v. Adobe Systems, Inc. et al*, (No. 2:11-cv-325-JRG)

(E.D. Tex) ("Rpost I Action").  Clark Decl. at ¶ 11.

Shortly thereafter Dr. Clark was approached by Mr. Lowe who sought to hire him as a

technical expert to assist Lowe Graham in defense of its clients, DocuSign, Inc. and their

customers, in connection with Lowe Graham's defense of patent infringement allegations in *Rpost*

*Holdings, Inc. v. DocuSign, Inc.* (No. 2:12-cv-683-JRG) (the "Rpost II Action"). *Id.* at ¶ 12.

During the course and scope of Dr. Clark's engagement as an expert in the Rpost II and

Rpost III Actions, Dr. Clark appeared for videotape deposition on May 22, 2013 (i.e., almost six

years prior to signing the Expert Consulting Agreement at issue in this action).  David Lowe of

Lowe Graham Jones ("Lowe Graham") was one of the attorneys defending Dr. Clark's deposition.

At the deposition, Dr. Clark was questioned about patents and patent applications that were listed

on his CV.  Dr. Clark freely and fully answered the question and did not conceal any information

regarding his patents.  Thus, Dr. Clark made DocuSign aware of the patents that are at-issue in this

action on May 22, 2013.  *Id*. at  ¶ 28.

The Rpost II Action was administratively stayed between 2014 and 2018.  At about the

time that the Rpost II Action was stayed, Dr. Clark informed Lowe Graham that he would no

longer work for them in connection with that case due to DocuSign's repeated late payment of

invoices and he terminated his relationship with them.  *Id.* at ¶¶ 18-19.  When the Rpost II Action

was reopened, Lowe Graham reached out to Dr. Clark and asked if he would reconsider his earlier

position and agree to work for them again in the Rpost II Case.  *Id.* at ¶ 20.  At about that same

time, Crowell & Moring, LLP ("Crowell") and Kao, LLP ("Kao") also contacted Dr. Clark and

sought to hire him as a technical expert to provide expert consultation regarding certain patents to

facilitate their legal representation of their clients in a companion suit, *Rpost Holdings, Inc. et al.*

*v. Selligent, Inc., et al.* (No. 2:12-cv-515-JRG) (E.D. Tex.) ("Rpost III Action").  *Id.*

On March 13, 2019, Dr. Clark executed an Expert Consulting Letter Agreement (the

"Agreement") a copy of which is attached to Plaintiff's FAC as Exhibit A, ECF No. 21-1.  The

Agreement was also executed by Lowe Graham, Crowell, and Kao.  ECF No. 21-1.

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

NOTICE OF MOTION AND MOTION TO
DISMISS FIRST AMENDED COMPLAINT; MPA

2

Case No. 3:21-cv-04785-WHO

1    Dr. Clark signed the Agreement and  performed all services under the Agreement in

2 Maryland.  *Id.* at ¶ 23.  As required by the Agreement, Dr. Clark sent his invoices for consulting

3 services relating to DocuSign to Lowe Graham in Seattle, Washington.  *Id.* at ¶ 24; ECF No. 21-1.

4    DocuSign refused to pay Dr. Clark's final invoice for the Rpost II Action so, on July 15,

5 2020, Dr. Clark sued DocuSign in the Circuit Court for Anne Arundel County, Maryland for

6 breach of contract and fraud ("Clark I").  *Id.* at ¶ 25.  A copy of the Clark I complaint is attached

7 to the FAC as Exhibit H.  ECF No. 21-8.  DocuSign settled Clark I without answering or

8 counterclaiming.  *Id.* at ¶ 26, <u>Exhibit 1</u>.

9    On April 12, 2021, Dr. Clark sued DocuSign, Inc. for infringement of U.S. Patent Nos.

10 8,695,066 (the "066 Patent"), 9,391,957 (the "957 Patent") and 10,129,214 (the "214 Patent") in

11 the United States District Court for the District of Columbia in a case captioned, *Paul C. Clark v.*

12 *DocuSign, Inc.,* 21-cv-01007-DLF (the "DC Action" or the "DC Infringement Action").  Clark

13 Decl. at ¶ 27; ECF No. 21-2.

14    On May 25, 2021, DocuSign filed a motion to dismiss the DC Action under Fed. R. Civ. P.

15 12(b)(2), asserting improper venue.  DocuSign's motion is presently pending.

16    On June 22, 2021, DocuSign filed this duplicative Declaratory Judgment ("DJ Action")

17 without serving it on Dr. Clark and served it a little over two months later on August 27, 2021.

18    DocuSign's DJ Action seeks a declaratory judgment that DocuSign does not infringe the

19 '066, '957 and '214 patents, **the same three patents** that DocuSign is accused of infringing in the

20 DC Action.  FAC at ¶ 4.  DocuSign also asserts fraud-based claims for Fraudulent

21 Misrepresentation, Negligent Misrepresentation, and Concealment under California Civil Code §

22 1572, which are based on alleged misrepresentations purportedly made by Dr. Clark in connection

23 with the Agreement.  *Id.* at ¶¶ 41-66.

24 **III.    LEGAL ARGUMENT**

25    **A.    DR. CLARK IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA**

26       **1.    Legal Standard**

27

28 There are two types of personal jurisdiction: "general or all-purpose" and "specific or case-

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

NOTICE OF MOTION AND MOTION TO
DISMISS FIRST AMENDED COMPLAINT; MPA          3          Case No. 3:21-cv-04785-WHO

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1   linked." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919-920 (2011).

2   General jurisdiction permits jurisdiction over a defendant even when the claims at issue do not

3   arise from or relate to activity in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473

4   n.15 (1985).  A court may assert general personal jurisdiction over defendants "when their

5   affiliations with the State are so 'continuous and systematic' as to render them essentially at home

6   in the forum State." *Goodyear*, 564 U.S. at 919 (*quoting Int'l Shoe*, 326 U.S. at 317). "Specific

7   jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying

8   controversy, principally, activity or an occurrence that takes place in the forum State and is

9   therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks

10  omitted).

11       In determining whether there is personal jurisdiction over a defendant in a patent case,

12  Federal Circuit law applies. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222,

13  1230 (Fed. Cir. 2010). This is true even where the patent action is one for a declaratory judgment

14  that there is no infringement or that the patent is invalid. *See Breckenridge Pharm., Inc. v.

15  Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) ("The issue of personal jurisdiction

16  in a declaratory action for noninfringement is 'intimately related to patent law' and thus governed

17  by Federal Circuit law regarding due process.").

18       In a declaratory judgment action for non-infringement and/or invalidity, the relevant

19  jurisdictional inquiry is the extent that the defendant patentee purposefully directed such

20  enforcement activities at residents of the forum and the extent to which the declaratory judgment

21  claim arises out of or relates to those activities.  *Radio Sys. Corp. v. Accession Inc.,* 638 F. 3d 785,

22  789 (Fed. Cir. 2011).  Only the patentee's activities that relate to the enforcement or defense of the

23  patent can give rise to specific personal jurisdiction.  *Id.*

24       For non-patent tort claims, with respect to specific personal jurisdiction, the Ninth Circuit

25  employs the following three-part test: (1) the non-resident defendant must purposefully

26  direct his activities toward the forum, (2) the claim must arise out of such activities, and

27  (3)  the exercise of jurisdiction must comport with fair play and substantial justice.

28  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  Plaintiff bears the burden on

the first two prongs. *Id.* If both prongs are established, defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* Purposeful direction "'requires that the defendant … have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir.))). The "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 291 (2014). Instead, two factors are considered in determining whether an action is expressly aimed at the forum state:

> (1) First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State. . . . Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.
> (2) Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Morrill*, 873 F.3d at 1143 (citing *Walden*, 571 U.S. at 277-78) (no specific personal jurisdiction where "[a]ny links to [the forum state]… occurred only because it happened to be where Plaintiffs resided").

### 2.    DocuSign Has Not Alleged Sufficient Facts to Establish General Jurisdiction

It is unclear whether DocuSign asserts that this Court has general jurisdiction over Dr. Clark. Regardless, DocuSign has not alleged sufficient fact to support general jurisdiction.

For general jurisdiction to exist over a nonresident defendant, it must have affiliations with the forum state "so continuous and systematic as to render the foreign [defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ) (internal quotation marks omitted). In other words, a defendant's "continuous and systematic general business contacts" with the forum must "approximate physical presence" in the forum state. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 803 (9th Cir. 2004 (quoting

1   *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) and *Bancroft &*

2   *Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000)).

3          Dr. Clark's declaration makes quick work of the notion that he is subject to general

4   jurisdiction in this Court.  Dr. Clark does not have substantial or continuous business contacts with

5   California.   Dr. Clark is a Maryland resident.  Clark Decl., ¶ 2.  Dr. Clark does not have any

6   phone numbers, fax numbers, storage or warehouse spaces, does not pay any utilities, or have any

7   address of any kind in California.  *Id* at ¶ 3.   Dr. Clark does not own property or pay taxes in

8   California.  *Id*. at ¶¶ 5-6.  Dr. Clark does not have bank accounts in California. *Id.* at ¶ 7.  Dr.

9   Clark has never owned or operated a business licensed, located, or organized in the State of

10  California. *Id.* at ¶ 4.  Dr. Clark is not an officer, director, manager or partner of any California

11  entity.  *Id*.  By any measure, Dr. Clark's two appearances in California to testify as an expert

12  witness (one in 2019 and again in 2021) can hardly be characterized as substantial or continuous

13  and fall well short of what is required to establish general jurisdiction.

### B.   THIS COURT DOES NOT HAVE SPECIFIC JURISDICTION OVER DR. CLARK BECAUSE DOCUSIGN'S ALLEGATIONS OF DR. CLARK'S ACTIVITIES DO NOT SATISFY THE MINIMUM CONTACTS REQUIREMENTS

#### 1.   No Specific Jurisdiction Over The Declaratory Judgment Of Non-Infringement

18         DocuSign has failed to plead sufficient facts to show a *prima facie* case of specific

19  jurisdiction over Dr. Clark for its declaratory judgment count. The FAC is devoid of even a single

20  averment relating any enforcement activities by Dr. Clark of the patents in suit, let alone

21  averments of such activities that are directed towards DocuSign in California.  Accordingly, this

22  Court does not have specific jurisdiction for the declaratory judgment count.  *Picturewall Co. v.*

23  *Rice*, No. C 09-5442 PJH, 2010 WL 1753209, at *4 (N.D. Cal. Apr. 29, 2010) (finding

24  Picturewall's stated bases for personal jurisdiction – infringement letters and national marketing

25  campaign insufficient for specific jurisdiction); *Red Wing Shoe Co. v. Hockerson-Halberstadt,*

26  *Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (three cease and desist letters accompanied by license

27  offer to accused infringer and patentee's licensing revenues from 34 nonexclusive licensees

28  insufficient for specific jurisdiction).

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

**2.      No Specific Jurisdiction Over DocuSign's Fraud-Based Counts**

DocuSign's fraud-based counts are replete with infirmities that undermine their substantive viability and which complicate the jurisdictional analysis.  Those infirmities are addressed in detail in Section C of this brief.

Assuming, *arguendo*, that that the fraud-based claims are properly pleaded, DocuSign still cannot satisfy the purposeful direction requirement for specific jurisdiction with respect to its those claims.  Read in the light most favorable to DocuSign, the FAC may be said to allege that Dr. Clark made intentional fraudulent misrepresentations or omissions targeted at DocuSign.  FAC at ¶¶ 27-31, 35, 44, 53 and 61.  However, Dr. Clark's alleged fraudulent conduct took place in Maryland.  Dr. Clark executed the Agreement in Maryland and did not transmit the Agreement to California.  Clark Decl. at ¶ 22.  Further, Because Dr. Clark was located in Maryland, any purported concealment would have necessarily taken place in Maryland.  Accordingly, all of Dr. Clark's purported fraudulent conduct took place in Maryland and, as such, was not expressly aimed at California.  *Naghavi v. Belter Health Measurement & Analysis Tech. Co.*, No. 20-CV-01723-H-KSC, 2021 WL 461725, at *4 (S.D. Cal. Feb. 9, 2021) (finding that because conduct at issue occurred in China, none of the conduct was expressly aimed at California.)

The only connection alleged in the FAC between California and the purported fraudulent representations or omissions made in Maryland are: (1) that DocuSign is headquartered in California; and (2) that Dr. Clark received payment from an unidentified source.  FAC at ¶ 13.  DocuSign pleads no facts that tie Dr. Clark's alleged receipt of payment under the Agreement to a finding of specific jurisdiction.  While DocuSign may be headquartered in San Francisco, its California presence does not move the jurisdictional needle.  The Supreme Court and the Ninth Circuit require that the specific jurisdiction analysis focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum.[1]  *See Walden*, 571 U.S. at 290; *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).  Accordingly, DocuSign has failed to

---

[1] DocuSign's allegations in paragraph 13 of the FAC that Dr. Clark entered into expert consulting agreements with non-parties allegedly based in California is irrelevant for the purposes of specific personal jurisdiction as those contacts are unrelated to DocuSign's causes of action.

satisfy the purposeful direction test and, as a result, has failed to make a *prima facie* showing that the Court has specific jurisdiction over Dr. Clark for the fraud-based counts.  *See, GemCap Lending I, LLC v. Pertl*, 2019 U.S. Dist. LEXIS 210246, at *16-17 (C.D. Cal. Aug. 9, 2019) (dismissing fraud claim against non-resident defendant for lack of personal jurisdiction because plaintiff had shown only that it was based in California and that the defendant's purported misrepresentation "might have an effect on [plaintiff] in California"); *Naghavi v. Belter Health Measurement & Analysis Tech. Co.*, No. 20-CV-01723-H-KSC, 2021 WL 461725, at *5 (S.D. Cal. Feb. 9, 2021); *Prevail Legal, Inc., v. Gordon*, No. 20-CV-07173-BLF, 2021 WL 1947578, at *6 (N.D. Cal. May 14, 2021) (rejecting argument that plaintiff's California location and defendant's alleged knowledge that harm would be felt there are sufficient to confer jurisdiction).

In short, DocuSign's paltry recitation of jurisdictional facts falls well short of a *prima facie* showing of general or specific jurisdiction.  Given the weakness of DocuSign's jurisdictional allegations and Dr. Clark's averments regarding his lack of contacts with California, this Court should dismiss DocuSign's complaint without leave to replead jurisdictional facts as any such repleading would be futile.

## C.   THE FRAUD-BASED CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### 1.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678* (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  A claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

Claims for fraud must also meet a heightened pleading standard, "a party must state with particularity the circumstances constituting the fraud ..."  Fed. R. Civ. P. Rule 9(b); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000) (fraud must be pled "with a high degree of

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

meticulousness."); *Das v. WMC Mortg. Corp.*, 831 F.Supp.2d 1147, 1166 (N.D. Cal. 2011) (applying heightened pleading requirements under FRCP 9(b) to claims for intentional misrepresentation, fraudulent concealment, and negligent misrepresentation and dismissing all three claims); *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1127 (9th Cir. 2009) (Where the fraud at issue takes the form of an omission, the nondisclosure claim must still be pleaded with particularity.). "Rule 9(b) requires that a plaintiff set forth what is false or misleading about a statement, why it is false, including the 'who, what, when, where, and how of the misconduct charged.'" *Davis v. Chase Bank U.S.A., NA.*, 650 F. Supp. 2d 1073, 1090 (C.D. Cal. 2009), quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Complaints alleging fraud must not only comply with the particularity requirements of Rule 9(b), but also the plausibility standard of Rule 8(a). *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003), overruled on other grounds by *Odom v. Microsoft, Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). In assessing plausibility, courts have considered whether there is an "obvious alternative explanation" other than fraudulent intent, for the statement or action which the plaintiff alleges to be fraudulent. *See Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1056 (9th Cir. 2011) ("[i]n assessing the plausibility of an inference [of fraud], we draw on [our] judicial experience and common sense . . . and consider 'obvious alternative explanation[s]'") (citations omitted).

### 2. DocuSign's Fraud-Based Claims Must Be Dismissed Under the "Economic Loss Rule."

As preliminary matter, all of DocuSign's fraud-based claims are barred as a matter of law by the "economic loss rule." The economic loss rule bars tort claims based on contract breaches, "thereby limiting contracting parties to contract damages*." UMG Recordings, Inc. v. Global Eagle Entertainment, Inc*., 117 F.Supp.3d 1092, 1103 (C.D. Cal. 2015); *JMP Securities LLP v. Altair Nanotechnologies Inc*., 880 F.Supp.2d 1029, 1042-1043 (N.D. Cal. 2012) (the economic loss rule, in summary, "is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement.") Generally, such purely economic contract losses are not recoverable in tort. *NuCal*

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

025081.0001/6482354.1

1   *Foods, Inc. v. Quality Egg LLC*, 918 F.Supp.2d 1023, 1028 (E.D. Cal. 2013).

2       Here, DocuSign's tort claims for intentional misrepresentation (fraud), negligent

3   misrepresentation, and concealment are based entirely on Dr. Clark's alleged breach of the

4   conflicts check clause found in the Agreement.  FAC, ¶¶ 14, 21, 26, 27, 43, 52, and 61 (repeating

5   the allegation that "[a]s part of the Agreement, Dr. Clark represented that he had 'conducted a

6   comprehensive conflicts of interest search and analysis and confirms that neither he nor his

7   company has a conflict of interest in connection with this matter.'").  Specifically, DocuSign

8   contends that Dr. Clark "unreasonably failed to analyze whether these patents - Dr. Clark's private

9   interests - could constitute a potential conflict of interest with DocuSign" and that Dr. Clark

10  therefore did not conduct a "comprehensive" conflicts check as represented in the Agreement.

11  FAC at ¶ 30.  Filing a breach of contract claim under a tort theory is improper under the economic

12  loss rule, and the tort claims are therefore subject to dismissal.  *UMG Recordings, Inc.* 117

13  F.Supp.3d at 1103-1106; *see also Soil Retention Products, Inc. v. Brentwood Industries, Inc.*, 521

14  F.Supp.3d 929, 956 (S.D. Cal. 2021) ("courts have nonetheless dismissed negligent

15  misrepresentation claims as barred by the economic loss rule where the complained-of

16  misrepresentations were simply those made in the course of forming the contract").

17      Although some courts have found that "conduct amounting to a breach of contract

18  becomes tortious only when it also violates a duty independent of the contract arising from

19  principles of tort law" (*see Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999)), DocuSign does not

20  adequately plead that Dr. Clark had an independent duty to disclose his patents outside of the

21  Agreement.  *See Oracle USA, Inc. v. XL Global Services, Inc.*, 2009 WL 2084154, at *4 (N.D.

22  Cal., July 13, 2009, No. C 09-00537 MHP)  ("The threshold question in this case is whether

23  [plaintiff] states a claim that arises from something other than contract-i.e., for a breach of some

24  duty that has been placed on [defendant] to vindicate social policy, rather than to protect

25  [plaintiff's] bargained-for expectations.").  The only potentially relevant allegation in the FAC that

26  Dr. Clark was under an independent duty to disclose the at-issue patents is that a "confidential

27  relationship existed between DocuSign and Dr. Clark by virtue of the Agreement." FAC at ¶ 63

28  (emphasis added.) However, this allegation is facially limited to the Agreement, and therefore

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1    does not constitute an independent duty.

2    Moreover, DocuSign's nonsensical citation to the ABA Section of Litigation Report to the

3    House of Delegates dated August 2012 (Exhibit J to the FAC) does not identify any applicable

4    independent duty that Dr. Clark owed to DocuSign.  Indeed, the very title of the document "ABA

5    Guidelines For Retention of Experts By Lawyers" (emphasis added) makes it evident that, to the

6    extent these guidelines purport to create a duty of disclosure, such a duty applies to lawyers and

7    not experts.  ECF No. 21-10 at p. 3 (see also Preamble: "These Guidelines apply to lawyers'

8    retentions of experts in connection with services provided to assist the lawyer's client, in

9    connection with an engagement regarding a litigated or contested matter.").  Put simply, Dr. Clark

10   did not have any duty to disclose the at-issue patents that was independent of the Agreement - and

11   the economic loss rule therefore precludes DocuSign's fraud-based claims for intentional

12   misrepresentation, negligent misrepresentation, and concealment.[2]

13   **3.    The Fraud-Based Claims Must Be Dismissed Because DocuSign Fails
            To Adequately Allege Why Dr. Clark's Statement Or Omission Was
14          False Or Misleading.**

15   In addition to being barred by the economic loss rule, DocuSign's fraud-based claims are

16   deficient as they fail to plead all of the required elements, and with particularity.  A fraud-based[3]

17

18   [2]    To the extent that the fraud-based claims are not dismissed entirely, then at a minimum any
     and all allegations seeking tort damages (i.e., non-contract damages) should be stricken including
19   those seeking damages for costs of defending the DC Action (FAC, ¶¶ 33, 39, 49, 58, 66) and for
     punitive damages (FAC, Prayer for Relief, ¶ G).
20

21   [3]    In California, the general elements of a cause of action for **fraudulent misrepresentation**
     are (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of
22   the falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting
     damage.  *Yamauchi v. Cotterman,* 84 F.Supp.3d 993, 1018 (N.D. Cal. 2015); Cal. Civ. Code §
23   1572(1).

24   A **negligent misrepresentation** claim requires the same elements as a fraud claim, except
     the statement need only be made "without reasonable grounds for believing it to be true," rather
25   than knowledge of its falsity.  *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.
     App. 4th 226, 243 (Cal. App. 2d Dist. 2007); Cal. Civ. Code § 1572(2).
26

27   The elements for **concealment** are: (1) the defendant must have concealed or suppressed a
     material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3)
28   the defendant must have intentionally concealed or suppressed the fact with the intent to defraud

025081.0001/6482354.1

NOTICE OF MOTION AND MOTION TO                    11                    Case No. 3:21-cv-04785-WHO
DISMISS FIRST AMENDED COMPLAINT; MPA

1   claim must "set forth an explanation as to *why* the statement or omission complained of was false

2   or misleading." *Yourish v. Cal Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (emphasis added).

3   Here,  DocuSign alleges that Dr. Clark made a false representation by signing the Agreement,

4   which only represents that a conflicts of interest check was conducted and confirms that no

5   conflicts existed.  FAC at ¶ 43; ECF No. 21-1.  However, DocuSign's citation to the applicable

6   language containing the conflicts check omits important language.  The clause, in its entirety,

7   provides as follows:

8          Dr. Clark represents that he has not discussed this matter with, or consulted for, any
           ***opposing party*** to this matter.  Dr. Clark has conducted a comprehensive conflicts of
9          interest search and analysis and confirms that neither he nor his company has a conflict
           of interest in connection with this matter.
10

11  ECF No. 21-1 (emphasis added).

12         DocuSign fails to allege with particularity <u>why</u> Dr. Clark's signature of the Agreement

13  constitutes a false statement.  Specifically, the FAC does not allege that Dr. Clark did in fact have

14  a conflict as to an <u>opposing party</u> (i.e., the Rpost II Plaintiffs) in the matter for which he was

15  engaged as an expert consultant.  Rather, DocuSign only alleges that Dr. Clark owned patents that

16  he did not disclose at the time of the Agreement which, purportedly, presented a "conflict of

17  interest" under the Agreement.  FAC at ¶¶ 46, 47.  DocuSign's allegations regarding Dr. Clark's

18  non-disclosure of his own patents, however, fails to meet both the particularity and plausibility

19  requirements under FRCP 8(a) and 9(b) as follows:

20         First, DocuSign's factual allegations of falsity are not plead with the particularity required

21  under FRCP 9(b) because the FAC fails to explain <u>why</u> Dr. Clark's non-disclosure of his own

22  patents and/or confirmation that no conflicts existed as to his own patents was false or misleading

23  <u>at the time</u> that Dr. Clark signed the Agreement.  *See Yourish*, 191 F.3d at 993 ("Because a

24  plaintiff 'must set forth what is false or misleading about [the] statement,' he must 'set forth, as

25

26  ───────────────
    the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he
27  did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or
    suppression of the fact, the plaintiff must have sustained damage." *Marketing West, Inc. v. Sanyo*
28  *Fisher* (USA) Corp., 6 Cal.App.4th 603, 612–613 (1992); Cal. Civ. Code § 1572(3).

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1  part of the circumstances constituting fraud, an explanation as to why the disputed statement was

2  untrue or misleading when made.'") (citations omitted).  Here, DocuSign makes the conclusory

3  allegation that Dr. Clark "intentionally suppressed" from DocuSign the true facts that he held

4  patents that he believed DocuSign infringed, and that he made "false representations" about any

5  conflicts of interest.  FAC at ¶ 29, 46, 55, 61.

6          In attempt to bolster this claim, DocuSign's FAC appends an e-mail dated October 24,

7  2019 from Dr. Clark to Dan Feldstein of DocuSign in which Dr. Clark notifies DocuSign of its

8  need to license Dr. Clark's patents.  FAC at ¶ 29; ECF No. 21-9, pp. 4-5.  However, the FAC is

9  entirely devoid of any allegation that would establish that at the time he signed the Agreement,

10  seven months prior to sending the October 24 2019 e-mail, Dr. Clark had concluded that

11  DocuSign's products infringed his patents.  *Yourish*, 191 F.3d at 997 (finding that mere 'temporal

12  proximity' between contradictory statements "do[es] not create an inference that the earlier

13  statements were fraudulent."); *Arazie v. Mullane* (7th Cir. 1993) 2 F.3d 1456, 1468 ("[F]raud by

14  hindsight is not actionable.").  Thus, DocuSign's failure to properly plead any specific facts as to

15  *why* the statement or omission complained of was false or misleading at the time it was made

16  dooms the fraud-based claims.

17          Second, there is an "obvious alternative explanation" for the non-disclosure here because

18  the express language of the Agreement does not contemplate a disclosure of Dr. Clark's own

19  patents; rather, the conflicts check was with regard to whether Dr. Clark had a conflict as to an

20  <u>opposing party</u> in the Rpost II Action.  *See Cafasso*, 637 F.3d at 1056 (complaint alleging fraud

21  must also meet the plausibility standard (Rule 8(a)), and in assessing such plausibility courts can

22  draw on their "judicial experience and common sense" to consider whether there is an "obvious

23  alternative explanation" other than fraudulent intent by the defendant in making the statement at

24  issue).  In other words, a reasonable explanation and interpretation of the language in the

25  Agreement is that Dr. Clark was simply representing that he had no conflict as to the other parties

26  in the Rpost II and Rpost III Actions; indeed, the only required conflicts check was to check

27  whether Dr. Clark had a conflict with any of the Rpost II and Rpost III Plaintiffs.  ECF No. 21-1

28  ("Dr. Clark represents that he has not discussed this matter with, or consulted for, any **opposing**

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

**party** to this matter.")  Since Dr. Clark did not have a conflict with any opposing party, he accordingly and truthfully signed the Agreement.  The express language of the Agreement regarding an "opposing party" establishes an obvious alternative explanation for Dr. Clark's signing of the Agreement with the statement that he did not have a conflict.  *Cafasso* at 1056; *see also Iqbal,* 556 U.S. at 663-64 ("determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense").

Third, as reflected in the Agreement, Dr. Clark was hired to work on the Rpost II and III Actions as an invalidity expert, which means that his role was to review the Rpost II and III plaintiffs' patents and provide a neutral opinion as to the validity of the Rpost II and III plaintiffs' patents and products (not to review DocuSign's products).  The scope of Dr. Clark's engagement had nothing to do with any DocuSign product because that was not relevant to his role as an invalidity expert in the Rpost II and  III Actions.  Therefore, DocuSign's apparent contention that Dr. Clark was required to disclose a "conflict" as between DocuSign products and Dr. Clark's own patents (or that he supposedly suppressed his alleged awareness that DocuSign products infringed his patents) is negated by the express terms of Dr. Clark's engagement as described in the Agreement – and, consequently, fails to meet the plausibility requirements of FRCP 8(a).

Fourth, the FAC presupposes that a conflicts check requires the expert to conduct a patent infringement analysis to determine any of the litigants products infringe any and all of the expert's own patents.  But DocuSign alleges no facts to support this.  Rather, in apparent support for the proposition that Dr. Clark was "required" to conduct an extensive patent infringement analysis between his own patents and those of DocuSign (and, presumably, the other 24 defendants as well), DocuSign appends a copy of the ABA Section of Litigation Report to the House of Delegates dated August 2012.  However, as stated above in Section III(C)(2), even a cursory review of the Report reveals that there is no "requirement" that an expert conduct the type of extensive and time-consuming patent infringement analysis that DocuSign presumes.  If invalidity experts were required to conduct the type of conflicts check that DocuSign demands, the result would be the end of expert witness consulting as we know it as the cost of conducting the conflicts check would often eclipse the expert's fee.  DocuSign's claim is simply not supported by any

1    factual allegations, let alone the ABA Report.

2              **4.    The Fraud-Based Claims Must Be Dismissed Because DocuSign Fails to
                      Allege "Resulting Damages" With Particularity, or Proximate
3                     Causation.**

4              All three of the fraud-based causes of action require that the plaintiff plead resulting

5    damages, and do so with the required particularity.  Fed. R. Civ. P. 9(b); *Swanson v. Citibank,*

6    *N.A.*, 614 F.3d 400, 406 (7th Cir. 2010).  The FAC here fails to do this.  The FAC alleges that

7    damages "will be proven at trial" and that damages are "ongoing and increasing" due to

8    DocuSign's legal defense costs associated with the DC Action.  FAC at ¶ 39.  Neither of these

9    allegations meet the particularity requirements of FRCP 9(b) and cannot be cured by amendment.

10   *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (clear showing that

11   amendment would be futile justifies granting motion to dismiss without leave to amend).

12             First, allegations of damages "to be proven at trial" are insufficient to meet the particularity

13   requirements of Rule 9(b).  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.

14   1989) (allegations that are vague or conclusory are insufficient to satisfy the "particularity"

15   required by Rule 9(b)); see FAC at ¶¶ 49, 58, 66.   Specifically, the FAC does not allege at all, let

16   alone with particularity, whether or not DocuSign seeks to recover the monies paid to Dr. Clark

17   for his services as an expert as damages..

18             Second, assuming arguendo that DocuSign could amend its FAC to allege the expert fees

19   paid to Dr. Clark are the "resulting damages" required for fraud-based claims, such allegations

20   would not rescue the FAC from dismissal because it is facially implausible that Dr. Clark's

21   purported misrepresentation or concealment  "caused" DocuSign to incur expert witness fees in

22   the Rpost II Action.  Indeed, DocuSign would have necessarily incurred said expert fees regardless

23   of whether it hired Dr. Clark or another individual as an expert – so there can be no viable claim

24   for fraudulent misrepresentation because the expert fees were not "resulting damages" caused by

25   Dr. Clark.  *See Fladeboe v. American Isuzu Motors*, 150 C.A.4th 42, 64, 58 C.R.3d 225 (2007)

26   (auto manufacturer could not recover damages for fraud based on payments it made to auto

27   dealership for warranty reimbursements and dealer incentives because manufacturer would have

28   made those payments to some entity in any event, and "deception without resulting loss is not

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

actionable fraud") (citation omitted).  Moreover, there is no dispute that Dr. Clark did render

expert services in the Rpost II Action and that DocuSign benefitted from his services and was

therefore not damaged, and the FAC does not allege otherwise.[4]

Third, to the extent DocuSign contends that its "resulting damages" are the litigation

expenses it is incurring or will incur in the DC Action (see FAC, ¶ 33, 39, 49, 58,66), the FAC is

defective on its face."  The "resulting damages" for fraud-based claims must be **proximately**

**caused** by the misrepresentation or concealment and plaintiff's reasonable reliance on such

misrepresentation or concealment.  *See Service By Medallion, Inc. v. Clorox Company*

*("Medallion")*, 44 Cal.App.4th 1807, 1818 (1996) ('[i]n order to recover for fraud, as in any other

tort, the plaintiff must plead and prove the 'detriment **proximately caused'** by the defendant's

tortious conduct" (citing CA Civil Code, § 3333) (emphasis added); *Fladeboe*, *supra* at 65, 58

C.R.3d at 242 ("[t]o recover for fraud, a plaintiff must prove loss **proximately caused** by the

defendant's tortious conduct") (emphasis added).

For example, in *Medallion*, plaintiff, a janitorial company, alleged that the defendant

Clorox made fraudulent representations in order to induce plaintiff to submit a bid and enter into a

contract to provide janitorial services.  *Medallion* at 1813.  The parties then performed under the

contract.  *Id.* at 1818.  Clorox subsequently terminated the contract, and plaintiff sued for fraud

asserting that it was damaged because it had purchased materials in reliance on Clorox's

misrepresentations.  Upon Clorox's demurrer, the trial court dismissed the fraud claims and the

appellate court affirmed finding that "it was the termination [of the contract], not the

misrepresentation that resulted in the alleged harm" and therefore the misrepresentation was not

the proximate cause of plaintiff's losses.  *Id.* at 1819.

Like the plaintiff's complaint in *Medallion*, DocuSign's FAC is similarly defective.

---

[4]   It is worth noting that Dr. Clark's services as an invalidity expert resulted in DocuSign's
successful defense of the Rpost II Action, which undermines the basis for DocuSign's damages
allegations.  Furthermore, if DocuSign sought reimbursement for the fees paid to Dr. Clark for the
engagement in the Rpost II Action it would constitute an improper attempt to undue the settlement
agreement entered between Dr. Clark and DocuSign regarding a portion of such fees. See Clark
Decl., ¶ 26 (Ex. 1) (Settlement Agreement between Dr. Clark and DocuSign).

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

DocuSign alleges that its damages are ongoing and increasing "due to Dr. Clark's patent infringement suit and costs for the legal defense of the same" (FAC at ¶ 33) and that the suit was filed "due to his discontent with the resolution of a fee dispute related to the RPost Litigation" (FAC at ¶ 39). But these so-called damages (litigation costs) are not proximately caused by the alleged misrepresentations made by Dr. Clark in the Agreement, rather, the FAC itself alleges that they were "due to" Dr. Clark's alleged discontent and the filing of the DC Action. FAC at ¶¶ 33, 39. Just like the subsequent termination of the contract by Clorox in *Medallion* was the proximate cause of plaintiff's alleged damages (rather than the alleged misrepresentation made at the time of signing the contract), DocuSign's failure to pay Dr. Clark's fees and the DC Action here are the proximate cause of DocuSign's alleged damages, rather than the earlier alleged "misrepresentation" made by Dr. Clark at the time the Agreement was signed. As such, DocuSign has not plead "resulting" damages (i.e., has not plead proximate causation) for its fraud-based claims and such claims must be dismissed as a matter of law.

This also makes sense. Dr. Clark's alleged "misrepresentation" did not cause DocuSign to make or sell products that actually or potentially infringe Dr. Clark's patents, and DocuSign makes no such allegation. There is no allegation that specifically-identified persons at DocuSign relied on the Agreement to make products in disregard of Dr. Clark's patents. There is no allegation that a specifically identified attorney or in-house counsel for DocuSign told particular DocuSign software engineers or dealers to make and sell DocuSign's product without any fear that Dr. Clark might sue for infringement because he had signed the Agreement. Dr. Clark's claims for patent infringement stand on their own and exist regardless of whether or not he signed the Agreement in 2019. In short, there are no "resulting damages" as required under the law, and there is no fraud. The fraud-based claims should be dismissed in their entireties with prejudice.

### 4. The Fraudulent Misrepresentation Claim Must Be Dismissed Because DocuSign Fails to Allege that Dr. Clark Intended to <u>Induce Reliance</u> by DocuSign.

DocuSign's fraudulent misrepresentation and negligent misrepresentation claims also fail as a matter of law because DocuSign has not plead the element of intent to induce reliance with particularity. There is no allegation in the FAC that Dr. Clark intended to induce DocuSign to

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1    retain him as an invalidity expert in the Rpost II Action in order that Dr. Clark could then later sue

2    DocuSign for patent infringement in the DC Action.  The two are not connected in any meaningful

3    way.  While Dr. Clark signed the Agreement in order to be hired as an expert to assist Lowe

4    Graham, Crowell, and Kao in the defense of their respective clients in the Rpost II and III Actions,

5    and presumably DocuSign moved forward with Dr. Clark as an expert witness because he had

6    signed the Agreement, the FAC contains no allegation that he signed the Agreement intending to

7    have DocuSign rely on the Agreement as some kind of assurance or shield against a later patent

8    infringement claim by Dr. Clark.  Put simply, there is no allegation that Dr. Clark had the

9    fraudulent intent to use his execution of the Agreement to give DocuSign some kind of false

10   assurance that he would never sue them for infringement or that DocuSign's products did not

11   infringe his patents.  In fact, DocuSign alleges no facts to suggest or infer that Dr. Clark had such

12   foresight and such fraudulent intent at the time that he executed the Agreement.  And if DocuSign

13   did rely on the Dr. Clark's execution of the Agreement as some kind of protection or

14   indemnification against a future lawsuit by Dr. Clark, then such reliance by DocuSign was not

15   justifiable.  Accordingly, DocuSign has failed to plead the element of "intent to induce reliance"

16   with particularity.[5]

17           **5.      The Concealment Claim Must Be Dismissed Because Dr. Clark Was
                      Under No Duty To Disclose His Patents**

18

19           In addition to the reasons why all of DocuSign's fraud-based claims are defective as a

20   matter of law, DocuSign's claim for "concealment" is also defective because DocuSign has failed

21   to allege any required and recognized duty of Dr. Clark to disclose his patents.  Under California

22   law, a duty to disclose[6] may arise under the following four situations: (1) when the defendant is in

23   a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of

24

25   _____

     [5]       Moreover, DocuSign does not allege who at DocuSign read the Agreement (and the
26   particular statement at issue), and who purportedly relied on it for this purpose or any purpose.
     The element of reliance is not plead with required particularity.

27   [6]       The second element for a concealment claim is that the "defendant must have been under a
28   duty to disclose the fact to the plaintiff."  *Marketing West*, 6 Cal.App.4th at 612–613.

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts. [Citation.]" *Heliotis v. Schuman* (1986) 181 Cal.App.3d 646, 651.  None of these circumstances apply in the instant case.  Here, DocuSign purports to plead a duty to disclose under the first and third situations.

As to the first situation, the existence of a fiduciary relationship with plaintiff, DocuSign fails to allege a "fiduciary" relationship, but only alleges that there was a "confidential" relationship between DocuSign and Dr. Clark.  FAC at ¶ 63.  This is wholly insufficient.  A fiduciary relationship "is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client."  *Heliotis*, 181 Cal.App.3d at 651; *Richelle L. v. Roman Catholic Archbishop*, 106 Cal.App.4th 257, 271 (2003).  DocuSign only alleges a "confidential" relationship on the basis that the Agreement has language related to the confidentiality of information and materials disclosed to Dr. Clark during the course and scope of his engagement in the Rpost II and Rpost III Cases.

As to the third situation referenced above, there is no allegation that Dr. Clark "actively" concealed material facts when signing the Agreement.  The patents were already issued and a matter of public record (and the application which lead to one of the patents had been earlier disclosed in a deposition in the presence of DocuSign's counsel). There is no allegation that Dr Clark took any active measures to conceal his patents or patent applications from DocuSign. Moreover, the case cited by DocuSign in the FAC (¶ 63) *Marketing West, Inc., supra,* 6 Cal.App.4th at 613 actually supports a finding that Dr. Clark was under no duty to disclose.  In *Marketing West*, the basis for the concealment claim was that defendant (employer) entered into certain agreements with plaintiffs (employees), but concealed the fact that the employer would soon thereafter fire the plaintiffs and therefore concealed the "real purpose" for entering into the contracts.  6 Cal.App.4th 603, 613.  Here, DocuSign does not allege that Dr. Clark concealed the "real purpose" for entering into the Agreement.  Said differently, there are no allegations that Dr. Clark planned to later sue DocuSign and therefore concealed his patents at the time that he signed the Agreement.  *Id*.  Thus, unlike in *Marketing West*, there can be no finding that Dr. Clark was

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1   under any obligation to "make a full and a fair disclosure" at the time that he signed the

2   Agreement.

3   **D.      THE ACTION SHOULD BE DISMISSED UNDER THE FIRST-TO-FILE**
       **RULE**
4

5        DocuSign seeks a declaratory judgment of non-infringement of exactly the same three

6   patents that are already the subject of a first-filed DC Action.  Because the first-filed DC Action

7   involves common issues and the same parties, the instant action should be dismissed.

8                    **1.      Legal Standard**

9        When two actions that sufficiently overlap are filed in different federal district courts, one

10  for infringement and the other for declaratory relief, the declaratory judgment action, if filed later,

11  generally is to be stayed, dismissed, or transferred to the forum of the infringement action. *Merial*

12  *Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed.Cir.2012). This "first-to-file" rule exists to "avoid

13  conflicting decisions and promote judicial efficiency." *Id*.   "The court must consider three

14  threshold factors in deciding whether to apply the first-to-file rule: (1) the chronology of the two

15  actions; (2) the similarity of the parties; and (3) the similarity of the issues." *SMIC Americas et al.*

16  *v. Innovative Foundry Technologies, LLC*, No. 20-cv-02256-JSW, 2020 WL 5824046, *2 (N.D.

17  Cal. July 21, 2020).  Courts will not deviate from this general rule unless there are sound reasons

18  that would make it unjust or inefficient to continue the first-filed action.  *Id.*

19                  **2.      All of the First-To-File Factors Favor Dismissing This Action**

20       In the first-filed DC Action, Dr. Clark has alleged that DocuSign infringes the same three

21  patents at issue in the DJ Action.  DocuSign concedes that the DC Action was filed months before

22  this case.  FAC at ¶ 24.  The only defendant in this case is Dr. Clark.  Accordingly, there is no

23  dispute that the DC Action was filed first and that both cases involve the same parties.

24       The third factor, similarity of the issues, also supports application of the First-to-File Rule

25  – the patents and infringement allegations in the DC Action are identical to those in the instant DJ

26  Action.  In the DC Action, Dr. Clark asserted infringement of the '066, '957 and '214 patents.

27  ECF No. 1-2.  In the instant case, DocuSign asserts that it does not infringe those **same** patents.

28  FAC at ¶¶ 40-57.  In short, the actions involve "mirror image issues."  As such, the issues in the

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

two actions are identical satisfying the third factor.  *Microchip Tech., Inc. v. United Module Corp.*, No. CV-10-04241-LHK, 2011 WL 2669627, at *3 (N.D. Cal. July 7, 2011) (finding similarity of issues factor satisfied where actions involved "mirror image issues" because same patents were at issue in both actions).

In sum, when applied to the DC Action and this California DJ Action, all three factors – chronology, parties and issues – weigh decisively in favor of applying the First-to-File Rule.  Here the Court should dismiss rather than stay this action.  There was no need for DocuSign to file this declaratory judgment action during the pendency of the mirror DC Action.  Such filing simply adds to the expenses incurred by the Parties and the courts to no beneficial ends.  The addition of the non-meritorious fraud-based claims further unjustifiably multiplies the expense.  Judge Chhabria recently commented on the practice of filing duplicative declaratory judgment claims as follows:

> But the law should not leave room for this practice, particularly in patent cases, which are expensive and time-consuming enough as it is.  Even if a defendant in a patent case feels strongly that venue is lacking in the first lawsuit, there is simply no need to file a duplicative lawsuit for declaratory relief in a different court…The practice of allowing parties in patent cases to bring duplicative lawsuits, and then allowing them to keep those lawsuits on file in the hope the initial lawsuit is dismissed, is nothing but a waste of time and money for the parties and the courts.

*Marvell Semiconductor Inc. v. Monterey Rsch., LLC*, No. 20-CV-03296-VC, 2020 WL 6591197, at *1 (N.D. Cal. Nov. 11, 2020).  Under the present circumstances, dismissal of this case based on First-to-File Rule is appropriate.

## IV.     CONCLUSION

For the reasons stated above, Dr. Clark respectfully requests that the Court dismiss this Action with prejudice.

DATED:  November 24, 2021              WENDEL ROSEN LLP


                                       By:      */s/ Eugene M. Pak*
                                                Eugene M. Pak
                                                Attorneys for Paul C. Clark (Specially Appearing)