UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOCUSIGN, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PAUL C. CLARK,<br><br>　　　　　Defendant. | Case No. 21-cv-04785-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 28 |

Defendant Paul C. Clark filed this motion to dismiss plaintiff DocuSign, Inc. ("DocuSign")'s First Amended Complaint ("FAC"), which asserts claims of fraudulent misrepresentation, negligent misrepresentation, and concealment arising out of an agreement made between the parties, and seeks declaratory judgment that DocuSign did not infringe upon three of Clark's patents. I lack jurisdiction over this matter, as Clark is a citizen of Maryland who acts as an expert witness nationally; he did not purposefully avail himself of the laws of California nor purposefully direct his actions here. Even if jurisdiction were proper, the first-to-file rule warrants dismissing the declaratory relief action, at least, because of a pending patent lawsuit brought by Clark in Washington D.C. Accordingly, I GRANT Clark's motion to dismiss.

## BACKGROUND

In 2012, DocuSign, which is incorporated in Delaware and has its principal place of business in California, was sued for patent infringement in a case filed in the Eastern District of Texas: *RPost Holdings, Inc., et al. v. DocuSign, Inc.*, No. 2:12-CV-683-JRG ("the *RPost* Action"). *See* FAC [Dkt. No. 21] ¶ 11; Oppo. [Dkt. No. 29] 2:13-15. It retained Clark, a citizen of Maryland, as an expert witness. Oppo. at 2:15; FAC at ¶ 11. Several months later, Clark contends that he told the law firm representing DocuSign, Lowe Graham Jones ("Lowe Graham"), that he

would no longer work for DocuSign in connection with the *RPost* Action "due to DocuSign's repeated late payment of invoices." Mot. to Dismiss ("MTD") [Dkt. No. 28] 2:16-19. Clark then terminated his relationship with DocuSign. *Id*. The matter was administratively stayed for other reasons between 2014 and 2018. *Id.*

During the stay, the United States Patent and Trademark Office issued three patents to Clark. FAC at ¶¶ 16-18, 28. U.S. Patent No. 8,695,066 ("the '066 patent") was issued on April 8, 2014; U.S. Patent No. 9,391,957 ("the '957 patent") on July 12, 2016; and U.S. Patent No. 10,129,214 ("the '214 patent") on November 13, 2018. *Id*.

When the *RPost* Action reopened, Lowe Graham contacted Clark and "asked if he would reconsider his earlier position and agree to work for them again" in the matter. *See* MTD at 2:19-21. Two other law firms also sought to hire Clark as an expert consultant in a companion suit also filed in the Eastern District of Texas. *Id*. at 2:21-25.

In March 2019, Clark entered into an agreement ("the Agreement") to serve as an expert witness in the two cases. *See* FAC at ¶ 20. The Agreement included the following language: "Dr. Clark has conducted a comprehensive conflicts of interest search and analysis and confirms that neither he nor his company has a conflict of interest in connection with this matter." *Id*. at ¶ 21 (citing Ex. A at 3). DocuSign contends that, unbeknownst to the company, Clark did have such a conflict: the '066, '957, and '214 patents. *See id*. at ¶¶ 2-3, 38.

After the *RPost* Action settled in August 2019, Clark emailed DocuSign seeking outstanding payment for his work. *See* Oppo. at 3:12-15 (citing in part FAC, Ex. I). Then on October 24, 2019, Clark emailed DocuSign's CEO and associate general counsel, stating "you may require licenses to some of the following patents," followed by a link to patents he had applied for and held. *See* Oppo. at 3:14-16; FAC at ¶ 30 (citing Ex. I at 4-5). He also stated: "I will not take any future matters involving you or DocuSign and will have no conflict taking cases adverse to you." FAC at ¶ 13 (citing Ex. I at 4).

In July 2020, Clark sued DocuSign over its purported refusal to pay for his expert services. *See* MTD at 3:4-8. That matter settled. *Id*.

On April 12, 2021, Clark sued DocuSign for alleged infringement of the '066, '957, and

1  '214 patents in the District Court for the District of Columbia ("the D.C. Action").  FAC at ¶ 24.
2  While the D.C. Action was still pending (and it still is), DocuSign brought this case on June 22,
3  2021, alleging fraudulent misrepresentation and seeking declaratory judgement that it did not
4  infringe on the three patents.  *See* Dkt. No. 1.  It later filed an amended complaint adding claims of
5  negligent misrepresentation and concealment.  *See* Dkt. No. 21.  Clark filed this motion to dismiss
6  on November 24, 2021.  Dkt. No. 28.  I heard oral argument on January 5, 2022.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction.  The plaintiff then bears the burden of demonstrating that jurisdiction exists.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  The plaintiff cannot merely rely on the complaint's bare allegations, however "uncontroverted allegations in the complaint must be taken as true."  *Schwarzenegger*, 374 F.3d at 800.

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies."  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993).  "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution."  *Id.*; Cal. Civ. Proc. Code § 410.10.  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  *Schwarzenegger*, 374 F.3d at 800-01.

"There are two types of personal jurisdiction: general and specific."  *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986).  General jurisdiction exists when a defendant's affiliations with the forum state are "so continuous and systematic as to render them essentially at home in the forum state."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citation and quotation marks omitted).  Specific jurisdiction arises when a defendant's contacts with the forum state give rise to the claim in question.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

3

Federal Circuit law applies to any determination of personal jurisdiction in a patent case. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010). This includes actions for declaratory judgment of noninfringement. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017). When such an action is involved, the relevant inquiry for specific jurisdiction "becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (internal quotation marks and citation omitted). "Thus, only those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (citation omitted).

For other claims, the Ninth Circuit employs a three-part test for analyzing specific jurisdiction. *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). First, the defendant must "purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id*. (citation omitted). Next, the claim must "arise out of or relate to" those forum-related activities. *Id*. Finally, the exercise of jurisdiction must comport with fair play and substantial justice—in other words, it must be reasonable. *Id*.; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

**DISCUSSION**

I.  **PERSONAL JURISDICTION**

DocuSign "concedes that general jurisdiction does not exist over Clark in this action." Oppo. at 4:26-27. Neither does specific jurisdiction.

A. **Non-Patent Claims**

Under the first prong of the Ninth Circuit's test for specific jurisdiction, purposeful availment and purposeful direction "are, in fact, two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. Courts typically employ the first analysis (availment) in suits sounding in contract;

4

the second (direction) in those sounding in tort. *Id*.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id*. But the "mere existence of a contract with a party in the forum state" is not enough. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Rather, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine if the defendant's contacts are substantial and not merely random, fortuitous, or attenuated." *Id*. (internal quotation marks omitted).

Purposeful direction occurs when the defendant has: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citation omitted). To determine whether an act is "expressly aimed at the forum state," courts consider two factors. *Id*. at 1143. First, "the relationship must arise out of contacts that the defendant himself creates with the forum state," not the plaintiff's contacts. *Id*. Second, courts look to the defendant's contacts "with the forum state itself," not with persons who reside there. *Id*. The fact that a defendant's conduct affected a plaintiff with connections to the forum state does not establish jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 291 (2014).

In arguing that Clark purposefully availed himself of the forum state, DocuSign primarily relies on his work in other cases, which it contends shows that Clark "routinely targets the California forum for expert consulting agreements." *See* Oppo. at 6:20-7:13. It points to seven cases cited in the FAC in which Clark served as an expert witness in California or on behalf of California-based companies. *See id*. at 6:24-27 (citing FAC at ¶ 13). DocuSign then analogizes to *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021), where the Supreme Court held that specific jurisdiction existed because an auto manufacturer conducted "so much business" in the forum state, even though the cars at issue were designed, manufactured, and sold elsewhere. *Id*. at 6:28-7:8. DocuSign contends that because Clark has "other business ties" with California (the other expert consulting agreements) he may be "held to account for related

5

misconduct" pertaining to this agreement with DocuSign. *See id*. at 7:6-9.

*Ford Motor Co.* is distinguishable. The contacts between the defendant and the forum state in *Ford Motor Co.* far exceed any between Clark and California. Ford marketed two car models to residents of Minnesota and Montana "[b]y every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail," sold new and used vehicles throughout the states, and repaired those vehicles at Ford dealerships within them, among other activities. *Ford Motor Co.*, 141 S. Ct. at 1028. These contacts are far more substantial and direct than the seven cases over a 15-year period in which Clark worked as an expert witness in California or on behalf of a California-based entity. Moreover, the Supreme Court found that Ford's conduct related to the asserted claims because the company "systematically served a market in Montana and Minnesota *for the very vehicles* that the plaintiffs allege malfunctioned and injured them in those States." *See id*. (emphasis added). DocuSign has not alleged a similar connection between Clark's other agreements and the one at issue. It does not contend that Clark's Agreement with DocuSign is identical to his other expert consulting agreements, or that the agreements contain the same subject matter or language. It is unclear from the bare allegations of the complaint whether DocuSign's claims relate to the very vehicle or another model.

DocuSign does not otherwise show that Clark purposefully availed himself of California. The mere existence of the Agreement does not establish jurisdiction. *See Sher*, 911 F.2d at 1362. DocuSign does not allege that Clark executed or performed the Agreement in California. *See* FAC at ¶ 13. And the terms of the Agreement and the parties' actual course of dealings do not establish substantial contacts between Clark and California. The Agreement's terms focus on two cases in Texas, and does not contemplate past or future work by Clark on DocuSign's behalf. *See id.* at ¶ 20; Ex. A at 2-4. Although DocuSign previously hired Clark in connection with the *RPost* Action, that relationship lasted only months before Clark terminated it, and then the case was stayed for several years. *See* Oppo. at 2:15-16; MTD at 1:28-2:19. In October 2019 (only seven months after DocuSign rehired Clark), Clark stated that he would "not take any future matters involving . . . DocuSign." *See* FAC at ¶ 20; Ex. I at 4. The long pause in employment and Clark's subsequent comments indicate that his work for DocuSign was limited; his contacts with California were not

substantial enough to constitute purposeful availment.

Turning to purposeful direction, DocuSign contends that Clark "expressly aimed" an act at California by sending the signed Agreement to a San Francisco-based attorney listed in the Agreement and to Lowe Graham, which, although located in Seattle, Washington, was acting on behalf of DocuSign, a California company. *See* Oppo. at 8:4-15. But the Agreement itself belies this argument. The Agreement relates to two cases filed in Texas. *See* FAC, Ex. A. It does not require Clark to perform services in California. *Id*. It directs Clark to send invoices to Lowe Graham at a Seattle mailing address and another firm in New York. *See id*. at 2. It does not specify that the San Francisco-based attorney is based in San Francisco. *See id*. at 3. In fact, the Agreement itself makes no mention of California at all. *See* FAC, Ex. A.

DocuSign has not sufficiently established contacts between Clark and California. Instead, it merely alleges that Clark's conduct affected a company with connections to California. This is not enough to show that he "expressly aimed" his actions at the forum state, as required under the purposeful direction analysis. *See Walden*, 571 U.S. at 291. When it comes to the non-patent claims, therefore, DocuSign has failed to show that specific jurisdiction exists.

**B. Patent-Related Claims**

Under Federal Circuit law, when determining whether the patentee "purposefully directed" enforcement activities at forum residents and the extent to which the declaratory judgment claim "arises out of or relates to those activities," courts look for more than just a letter threatening suit for infringement. *See Avocent*, 552 F.3d at 1333. "Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998). Instead, courts look for "other activities directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Avocent*, 552 F.3d at 1333 (citation omitted). Examples include "initiating judicial or extra-judicial patent enforcement within the forum." *Id*. at 1334.

DocuSign asserts that there is "ample evidence that Clark directed several settlement communications and infringement allegations at DocuSign, which amplified continually" until

7

1   Clark filed the D.C. Action.  Oppo. at 10:8-10.  However, it mentions only the October 24, 2019,
2   email from Clark that DocuSign "may require licenses" to the patents-in-suit, as well as the
3   infringement lawsuit that he ultimately filed.  *Id*. at 10:11-17.  DocuSign contends that the D.C.
4   Action "went beyond simply informing DocuSign of Clark's allegations of infringement," and that
5   he instead directed his patent-related actions at California.  *Id*. at 10:16-18 (citing *Trimble Inc. v.*
6   *PerDiemCo LLC*, 997 F.3d 1147, 1157 (Fed. Cir. 2021)).

7   *Trimble* is distinguishable.  There, the defendant exchanged 22 communications with the
8   plaintiff in California over three months, including an unfiled complaint, an offer to enter into
9   binding mediation, and a detailed threat of litigation that "went so far as to identify the counsel it
10  retained to sue . . . and the venue in which it planned to file suit."  *See Trimble*, 997 F.3d at 1156-
11  57.  A single email from Clark stating that DocuSign *may* require licenses is hardly the same.

12  Even if the email could be construed as a threat of suit for infringement, there must be
13  other activities by Clark directed at California and related to the cause of action to establish
14  jurisdiction.  *See Avocent*, 552 F.3d at 1333.  While initiating judicial enforcement of a patent
15  supports personal jurisdiction, it does so only when the defendant initiates such enforcement
16  within the forum state.  *See id.* at 1339; *see also Adobe Sys. Inc. v. Tejas Research, LLC*, No. C-
17  14-0868-EMC, 2014 WL 4651654, at *4-5 (N.D. Cal. Sept. 17, 2014).  Clark filed his action in
18  Washington, D.C.  That does not support exercising jurisdiction over Clark in California.  Without
19  more, DocuSign fails to allege sufficient enforcement activities by Clark establishing specific
20  jurisdiction over the declaratory judgment claims here.

21  For these reasons, I lack jurisdiction over this case.  Clark's motion to dismiss is
22  GRANTED without prejudice.

23  **II.    FIRST-TO-FILE RULE**

24  Beyond jurisdiction, there is an additional barrier to bringing DocuSign's claims in this
25  court: the D.C. Action.

26  Under the "first-to-file" rule, a district court may stay, transfer, or dismiss a duplicative
27  action that is later filed.  *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).  The
28  purpose of the doctrine is to "avoid conflicting decisions and promote judicial efficiency."  *Id*.

8

There is an "ample degree of discretion" with the rule; it is "not rigidly or mechanically applied." *Id*. When considering whether to exercise this discretion, courts must consider three factors: the chronology of the lawsuits, the similarity of the parties, and the similarity of the issues. *SMIC, Ams. v. Innovative Foundry Tech. LLC*, 473 F. Supp. 3d 1021, 1024 (N.D. Cal. 2020). The issues "need not be identical, only substantially similar," meaning there must be a "substantial overlap" between the two suits. *See id.* at 1026 (citing *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240-41 (9th Cir. 2015)). "In patent litigation, the first-filed action is preferred . . . unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Id*. at 1024 (internal citation and quotation marks omitted).

The first two factors are not at issue. The D.C. Action was filed before this suit, and involves the same parties as the instant matter. *See* FAC at ¶ 24. The matters also involve the same or substantially similar issues. The issue raised by the declaratory relief claims is identical to the issue in the D.C. Action: whether DocuSign infringed upon Clark's three patents. And there is substantial overlap between that purported infringement and issues central to the fraud-based claims brought in this case.[1] Whether DocuSign infringed upon Clark's patents speaks to whether there was any conflict of interest to disclose. Although the D.C. Action is not determinative of DocuSign's fraud-based claims, they are necessarily entangled. Deciding the fraud-based claims in this court risks a conflicting decision from the D.C. Action, undermining the intent behind the first-to-file doctrine.

DocuSign does not contest any of these threshold considerations. *See* Oppo. at 21:5-17. Rather, it argues that the rule is inapplicable because there is an improper venue motion pending in the D.C. Action. *Id*.

Courts in this district have applied the first-to-file rule regardless of pending motions in the first-filed case seeking transfer or asserting improper venue. *See, e.g., EMC Corp. v. Bright Response, LLC*, No. C-12-2841-EMC, 2012 WL 4097707, at *5 (N.D. Cal. Sept. 17, 2012)

---

[1] The parties did not address the first-to-file rule as it specifically relates to the fraud-based claims. *See* MTD at 20-21; Oppo. at 20-22. Any amended complaint and subsequent briefing should squarely address the rule's application to each of the claims at issue.

9

(applying the rule despite a pending motion to transfer); *USA Scientific, LLC v. Rainin Instrument, LLC*, No. C-06-4651-SBA, 2006 WL 3334927, at *2 (N.D. Cal. Nov. 16, 2006) (applying the rule despite a pending motion to dismiss for improper venue). The Hon. Vince Chhabria did the same in a more recent case with facts directly on point, offering this rationale:

> Even if a defendant in a patent case feels strongly that venue is lacking in the first lawsuit, there is simply no need to file a duplicative lawsuit for declaratory relief in a different court. There is no need to drag a second judge into addressing the initial question of whether venue is proper in the first lawsuit, and no need to keep a second lawsuit on file while waiting for the first judge to rule on that question. . . . The practice of allowing parties in patent cases to bring duplicative lawsuits . . . is nothing but a waste of time and money for the parties and the courts.

*Marvell Semiconductor Inc. v. Monterey Research, LLC*, No. 20-CV-03296-VC, 2020 WL 6591197, at *1 (N.D. Cal. Nov. 11, 2020).

I agree with Judge Chhabria. Patent litigation is particularly expensive and time-consuming. When patent cases are duplicative—when, as in this instance, a case involves the same parties and substantially similar issues as an earlier-filed suit—allowing the second suit to move forward undermines judicial efficiency. It would require parties to brief and argue the same issues, and courts to spend already-limited time and resources deciding them. Importantly, it risks conflicting decisions among courts. If venue is contested in the first suit, the proper course of action is for a party to file the appropriate motion, wait for it to be decided, and respond according to the court's ruling. Filing another lawsuit in another court beforehand is inappropriate.

Because the D.C. Action commenced first and involves the same parties and issues, the first-to-file rule applies. DocuSign's claims are DISMISSED.

## CONCLUSION

For the above reasons, Clark's motion to dismiss is GRANTED

**IT IS SO ORDERED.**

Dated: January 25, 2022



William H. Orrick
United States District Judge