UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOCUSIGN, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>PAUL C. CLARK,<br><br>    Defendant. | Case No. 21-cv-04785-WHO<br><br>**ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT AND SCHEDULING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 46 |

Defendant Paul Clark moves to dismiss a Second Amended Complaint ("SAC") filed by plaintiff DocuSign, Inc. ("DocuSign"), alleging fraud, breach of contract, and other claims arising out of an agreement between the parties for Clark to provide services as an expert consultant in patent litigation. His motion, based on lack of jurisdiction, is DENIED. DocuSign has plausibly pleaded specific jurisdiction: Clark allegedly made misrepresentations in the agreement that induced reliance by DocuSign in California. That satisfies purposeful direction as articulated by the Ninth Circuit.

## BACKGROUND

In or around January 2013, DocuSign hired Clark as an expert consultant in two patent infringement cases it faced in the Eastern District of Texas: *Rmail Ltd. v. DocuSign, Inc.*, No. 11-CV-00299-JRG (filed June 24, 2011) ("the *Rmail* Litigation") and *RPost Holdings, Inc. v. DocuSign, Inc.*, No. 12-CV-683-JRG (filed Oct. 25, 2012) ("the *RPost* Litigation"). Second Am. Compl. ("SAC") [Dkt. No. 44] ¶¶ 10-12. Clark performed litigation-related work for DocuSign in 2013 and early 2014. *Id*. at ¶ 12.

On April 24, 2014, the *RPost* Litigation was administratively stayed, about which time Clark terminated his agreement with DocuSign. *Id*. at ¶ 13. According to Clark, he told

1   DocuSign's counsel that he would no longer work for them "due to DocuSign's repeated late
2   payment of invoices." Mot. to Dismiss ("MTD") [Dkt. No. 46] 4:27-28.

3   The *RPost* stay was lifted more than four years later, on December 10, 2018. SAC at ¶ 14.
4   Counsel for DocuSign reached out to Clark to resume the consulting arrangement. *Id*. at ¶ 15.
5   According to DocuSign, Clark "insisted on the parties entering into a formal consulting agreement
6   specifying how [he] would be paid for his services." *Id*. Another law firm also sought to hire
7   Clark as an expert consultant in a companion suit filed in the Eastern District of Texas. *See* MTD
8   at 5:1-11. On March 12 and 13, 2019, Clark and representatives from three firms—Lowe Graham
9   Jones, Crowell & Moring, and Kao LLP—signed an expert consulting agreement ("the
10  Agreement"). *See* SAC at ¶ 16 (citing Ex. P). Per the Agreement, Clark would provide expert
11  consultation regarding certain patents to facilitate the firms' representation of 25 clients in the two
12  Eastern District of Texas cases. *See id*., Ex. P. The Agreement also included the following
13  language: "Dr. Clark has conducted a comprehensive conflicts of interest search and analysis and
14  confirms that neither he nor his company has a conflict of interest in connection with this matter."
15  *Id*. at ¶ 17 (citing Ex. P at 3).

16  DocuSign alleges that, unbeknownst to the company, Clark did have such a conflict: three
17  patents issued to Clark before and during the stay of the *RPost* Litigation. *Id*. at ¶¶ 18-19. Those
18  patents are U.S. Patent No. 8,695,066 ("the '066 Patent"), U.S. Patent No. 9,391,957 ("the '957
19  Patent"), and U.S. Patent No. 10,129,214 ("the '214 Patent"). *Id*. at ¶¶ 18-19.

20  The *RPost* Litigation was dismissed and the case closed on August 20, 2019. *Id*. at ¶ 26.
21  About two months later, on October 15, 2019, Clark emailed DocuSign's attorneys over payments
22  related to the litigation. *Id*. at ¶ 27. A back-and-forth ensued via email, as Clark asserted that
23  DocuSign had not paid two invoices, totaling approximately $105,500. *See id*. at ¶¶ 28-31.

24  On July 15, 2020, Clark sued DocuSign in Maryland state court, alleging fraud and breach
25  of contract in connection with the unpaid invoice. *Id*. at ¶ 33. The case settled later that year. *Id*.

26  On April 12, 2021, Clark sued DocuSign again, this time for infringement of the '066,
27  '957, and '214 patents. *Id*. at ¶ 34 (citing Ex. A). That case was filed in the District Court for the
28  District of Columbia and is still pending. *See id*. at ¶¶ 5, 8.

1        DocuSign brought this case on June 22, 2021, alleging fraudulent misrepresentation by
2   Clark and seeking declaratory judgement that it did not infringe on the three patents. *See* Dkt. No.
3   1. It later filed an amended complaint adding claims of negligent misrepresentation and
4   concealment. *See* Dkt. No. 21.
5        I dismissed the amended complaint, finding that personal jurisdiction was lacking and that
6   the first-to-file rule barred the claims for declaratory relief. Dkt. No. 41. DocuSign filed its SAC
7   on February 8, 2022, dropping the patent-related claims and instead asserting fraud, negligent
8   misrepresentation, concealment, breach of contract, and breach of the implied obligation of good
9   faith and fair dealing. Dkt. No. 44. Clark again moved to dismiss a month later. Dkt. No. 46.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The plaintiff cannot merely rely on the complaint's bare allegations, however "uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800.

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.*; Cal. Civ. Proc. Code § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01.

"There are two types of personal jurisdiction: general and specific." *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). General jurisdiction exists when a defendant's affiliations with the forum state are "so continuous and systematic as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

U.S. 915, 919 (2011) (citation and quotation marks omitted). Specific jurisdiction arises when a defendant's contacts with the forum state give rise to the claim in question. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

The Ninth Circuit employs a three-part test for analyzing specific jurisdiction, commonly known as the minimum contacts test. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020); *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018). First, the defendant must "purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* (citation omitted). Next, the claim must "arise out of or relate to" those forum-related activities. *Id.* Finally, the exercise of jurisdiction must comport with fair play and substantial justice—in other words, it must be reasonable. *Id.*; *see also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

**DISCUSSION**

Under the first prong of the Ninth Circuit's test for specific jurisdiction, purposeful availment and purposeful direction "are, in fact, two distinct concepts."[1] *Schwarzenegger*, 374 F.3d at 802. Courts generally use purposeful availment in determining jurisdiction in suits sounding in contract, and purposeful direction in those sounding in tort. *Id*.

**I.    PURPOSEFUL AVAILMENT**

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* But the "mere existence of a contract with a party in the forum state" is not enough. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Rather, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine if the defendant's contacts are substantial and not

---

[1] Only specific jurisdiction is at issue. DocuSign does not allege that general jurisdiction exists over Clark. *See* Oppo. [Dkt. No. 49] 4 n.2.

4

merely random, fortuitous, or attenuated." *Id*. (citation and quotation marks omitted).

I already held that the mere existence of the Agreement does not establish jurisdiction. *See* Order Granting Mot. to Dismiss FAC ("First MTD Order") [Dkt. No. 41] 6:18. DocuSign does not plead that Clark executed the contract in California or performed any work on DocuSign's behalf there. *See generally* SAC. I must then focus on the prior negotiations and contemplated future consequences, the Agreement's terms, and the parties' actual course of dealing.

Although DocuSign previously hired Clark in connection with the *Rmail* and *RPost* Litigation, that relationship lasted little more than a year before Clark terminated it. *See* SAC at ¶¶ 10-13. The parties then did not work together for more than four years while the *RPost* litigation was stayed. *Id*. at ¶¶ 13-14. The extended hiatus indicates that Clark's work for DocuSign was limited; it does not show that his contacts with California were substantial.

Nor does the Agreement itself. As I previously noted, the Agreement's terms focus on two cases in Texas. *See* SAC, Ex. P at 1. It instructs Clark to send his invoices to lawyers in Washington and New York. *See id*. at 2. Nowhere is California mentioned. Moreover, the Agreement was signed by lawyers from three law firms representing 25 different clients. *See id*. at 4. Even accepting as true DocuSign's allegation that Clark "was aware" that it is a California entity, DocuSign was but one of 25 companies covered by the Agreement. *See* SAC at ¶ 46. Rather than show that Clark made substantial contact with California, this suggests that the contact was random, as California happened to be one of an unknown number of states where the three law firms and 25 clients covered by the Agreement were located.

DocuSign argues that Clark's negotiations over the Agreement and regular interactions with DocuSign's counsel in California establish substantial contacts with California. *See* Oppo. at 15:3-23 (citing SAC at ¶¶ 43, 46). But sending letters—or in this case, emails—and making phone calls to a forum state is not enough to establish purposeful availment. The Ninth Circuit said exactly this in *Sher*, holding that "[t]hese contacts, by themselves, do not establish purposeful availment; this is not the deliberate creation of a 'substantial connection' with California." 911 F.2d at 1362. Nor has DocuSign shown that the emails promoted business in California, as they were sent in furtherance of work Clark performed outside of California in connection with two

1  lawsuits in Texas. *See id.* (stating that accepting payment from a California bank, making phone
2  calls and sending letters to California did not promote business in California because the business
3  promoted "was legal representation in Florida, not California"); *see also* MTD at 3:12-13 ("Clark
4  did not effectuate performance of his expert services in California.").

Considering the prior negotiations between Clark and DocuSign, the terms of the Agreement, and the parties' actual course of dealing, DocuSign has not shown that Clark's contacts with California were substantial, as required by the purposeful availment analysis.

## II.     PURPOSEFUL DIRECTION

Purposeful direction occurs when the defendant has: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). To determine whether an act is "expressly aimed at the forum state," courts consider two factors. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017). First, "the relationship must arise out of contacts that the defendant himself creates with the forum state," not the plaintiff's contacts. *Id*. Second, courts look to the defendant's contacts "with the forum state itself," not with persons who reside there. *Id*. The fact that a defendant's conduct affected a plaintiff with connections to the forum state does not establish jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 291 (2014).

The parties dispute whether to follow the "effects test" articulated in *Calder*, as Clark wants, or the analysis of *Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir. 1985), in light of the Ninth Circuit's decision in *Freestream Aircraft*. There, the court held that when an intentional tort is committed within the forum state, "*Paccar*, not *Calder*, is the proper starting place." *Freestream Aircraft*, 905 F.3d at 606. Under *Paccar*, "[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements" of the minimum contacts test. *See* 757 F.2d at 1064. In other words, the purposeful direction standard would be satisfied. *See id.*; *Freestream Aircraft*, 905 F.3d at 603.

In *Paccar*, the Ninth Circuit held that a foreign bank's allegedly fraudulent demand for payment induced reliance on the part of a bank in California. 757 F.2d at 1064. The court held

6

1 that this satisfied the first two requirements of the minimum contacts test, as the cause of action
2 arose out of that inducement. *Id*. In so deciding, the court relied heavily on *Data Disc, Inc. v.*
3 *Systems Technology Associates, Inc*, 557 F.2d 1280, 1288 (9th Cir. 1977), which held that "[t]he
4 inducement of reliance in California is a sufficient act within California to satisfy the requirement
5 of minimum contacts where the cause of action arises out of that inducement."

6       Although the facts in *Freestream Aircraft* are distinguishable—there, the alleged
7 intentional tort occurred within the forum state itself, where the defendant was accused of making
8 defamatory statements about the plaintiff at an aviation conference—the rule it articulates is clear.
9 *See* 905 F.3d at 600. It interpreted *Paccar* as holding that a "non-Californian defendant could be
10 sued in California for an allegedly fraudulent demand for payment made to a California entity"
11 because of the inducement of reliance in California. 905 F.3d at 603.

12       DocuSign concedes that any misrepresentation by Clark "may have been made" in
13 Maryland, where he apparently executed the Agreement. Oppo. at 10:14-16. But it contends that
14 "the inducement of reliance and actual reliance on such misrepresentations occurred in
15 California." *Id*. at 10:13-22. And because DocuSign's fraud claim arises out of that inducement,
16 it argues, purposeful direction is satisfied under *Paccar*. *Id*.

17       A plaintiff "need only demonstrate facts that if true would support jurisdiction over the
18 defendant." *Ballard*, 65 F.3d at 1498. Accepting DocuSign's allegations as true, it has met this
19 burden. *See Schwarzenegger*, 374 F.3d at 800. The SAC alleges that Clark's misrepresentations
20 about the Agreement's terms—namely, that he had conducted a comprehensive conflicts of
21 interest check and that no such conflicts existed—induced reliance by DocuSign in California.
22 *See* SAC at ¶ 17. Inducement of reliance is an element of fraud. *See Robinson Helicopter Co.,*
23 *Inc. v. Dana Corp*, 34 Cal. 4th 979, 990 (2004). As in *Paccar* and *Data Disc*, DocuSign's cause
24 of action arises out of the alleged inducement of reliance that occurred in California.

25       Clark's primary response is that DocuSign has not alleged that he made any
26 misrepresentations directly to DocuSign "in California or elsewhere." Reply [Dkt. No. 50] 7:16-
27 8:1. It argues that any misrepresentations were made to the lawyers who signed the Agreement on
28 behalf of multiple parties. *See id*. But those attorneys signed the Agreement on behalf of their

clients, who were subject to its terms. This is clear from the language of the Agreement itself, which expressly stated that counsel was acting "on behalf" of their clients, and referenced both "Defendants" and "Defendants' counsel" throughout in its terms. *See* Ex. P at 1-4.

Nor has Clark cited any case law that successfully counters the Ninth Circuit's direction in *Freestream Aircraft* to apply *Paccar*, or that purposeful direction is satisfied when a non-California defendant induces reliance in California. *See* Reply at 6:16-7:4. Only one of the cases it cites post-dates *Freestream Aircraft*, and it made no mention of purposeful direction, only purposeful availment. *See Fletcher v. Donald L. Johnson, PC*, No. 18-CV-08671, 2019 WL 4383945, at *2 (C.D. Cal. Apr. 26, 2019).

Without any authority to the contrary, I am bound by the collective holdings of *Freestream Aircraft*, *Paccar*, and *Data Disc*: the inducement of reliance in California by a non-California defendant is enough to satisfy the first two requirements of the minimum contacts test. Clark did not challenge the third requirement, reasonableness. *See* MTD at 7:18-11:26. Because personal jurisdiction exists over Clark with respect to the fraud claim, and because the other claims arise from a common nucleus of operative facts (relating to the Agreement's formation and terms), I will assert pendent personal jurisdiction over the remaining claims. *See NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 827 (N.D. Cal. 2014) (asserting pendent personal jurisdiction over contract-based claims based on the same facts as the tort-based claims over which the court had personal jurisdiction).

## CONCLUSION

Clark's motion to dismiss for lack of personal jurisdiction is DENIED. He shall answer the SAC within 10 days of the issuance of this Order. A Case Management Conference is set for July 5, 2022, at 2 p.m. The Joint Case Management Statement is due on June 28, 2022.

**IT IS SO ORDERED.**

Dated: June 14, 2022

William H. Orrick
United States District Judge